King, J.
The defendant in error brought her action in this court to recover damages under secs. 6134' and 6135 R. S., for the loss which she and her children had sustained by reason of the death of her husband, occasioned by the negligence of the defendant below. The decedent was a brakeman in the employ of the railroad company. At the time of his injury he was on a freight train, acting as a rear brakeman. The train was proceeding west, in the state of Indiana, and . Terry and the conductor were located upon the caboose of the train. There was a head brakeman upon, or near, the forward end of the train, and there was an engineer and fireman in the cab of the locomotive. They reached a. point on the line of the railroad where there came a down grade of a few feet to the mile, and as they entered upon that down grade, or while they were proceeding down - it, the freight train broke apart, and the forward part of the train, consisting of the locomotive and some nineteen cars, separated from the rear portion of the train, consisting of nearly as many cars, from two to seven or eight car lengths. I should say that the weight of the evidence indicates that the farthest they were apart at any one time was about seven car lengths. There is some evidence that they were not at any one time as far apart as that, but when first noticed by the witnesses of the railroad company they were apart two car lengths. Soon after it was discovered that they were separated, the rear portion overtook the front. part of the train, and collided with it with considerable violence, so that the cars that came together were somewhat injured, the evidence showing that the roofs were bulged . up. At the time of the collision the decedent was in the discharge of his. duty, or had gone, in the discharge of his duty, under the orders of the conductor, to set the brakes upon the caboose and upon a passenger coach next to the . caboose, which was being carried in this freight train. To *538 do that he stood upon the inside platform of the caboose or the platform of the passenger car next to the caboose, and in some manner, following the collision of the two sections of the train, he was thrown to the ground, and received the injuries from which he died. After the injury, and as soon as the train was stopped, it was found that the brakes on the caboose and passenger coach were set, indicating that the decedent had set them before the shock of the collision came. He was not seen by any witness immediately at the time of the collision.
Among the charges of negligence in the petition, there is an allegation that the engineer was negligent, and the petition sought to enable the plaintiff to avail herself of that allegation by alleging that in the state of Indiana there is a statute which made the defendant responsible for the acts of the person in charge of the locomotive.
During the time of the trial, counsel for the railroad company filed (and as the answer states, by leave of court) an amendment and a supplemental answer, alleging that some time during the pendency of the action and since the filing of the original answer, they had learned that the plaintiff had transferred to Messrs. Brumback & Thatcher, her attorneys, a part of the whole of her cause of action, or her right of action. To this was filed a reply denying that allegation, and setting forth the execution of a contract by which she agreed that a portion of the amount of money recovered from the defendant after trial and judgment, or by reason of a settlement of the case by her with the company, should be paid to her attorneys for their services rendered in her behalf. A motion was made at the time of the filing of this amended and supplemental answer that Brumback & Thatcher be made parties defendant, the answer alleging that they were necessary parties. There is no ruling in the record, either allowing that amended and supplemental answer to be filed, or overruling the motion *539 to make Brumback & Thatcher parties, or disposing of the question in any way, The record shows they were not made parties defendant. The amended and supplemental answer and reply simply raised a question of fact to be tried, like any other issue of fact. There is no evidence sustaining the amended and supplemental answer, which was denied in general by the reply, For that reason, there was no error in not bringing any of these alleged parties into court.
It is claimed in the second place that the court erred in the admission of testimony. There are a number of objections throughout the record, none of which it is important to notice, except objections which appear on pages 32 and 33 of the record. As to the other objections to the testimony, we do not find any error in the ruling of the court in those respects,
As I have said, this action was based in part upon the statute of the state of Indiana, making the company responsible to any brakeman or other person in its employ for the acts, among others, of an engineer, and the fact that they were fellow servants would not defeat the right of action, and the case proceeded to trial with the idea on the-part of the plaintiff and her attorneys of showing that this collision which resulted in the death of the decedent was the fault of the engineer, in that after he knew or ought to have known that the train had separated, he had slowed up by either turning off the steam or putting on the air brakes, (for this was a train several of the front cars of which were controlled by brakes operated by steam pressure), and had thereby slacked up the forward portion of the train, enabling the rear portion on this downward grade, by the force of gravitation, to run up and overtake it, and cause the collision. A rule of the company was introduced in evidence to the effect that if a train should part while in motion, great care must be used to prevent the detached *540 parts from coming into collision. The plaintiff below called as a witness Patrick Carney, who had been an engineer for over twenty years upon the Lake Shore railroad and upon the Chicago & Grand Trunk. No objection was made to his testifying on the ground that he had not sufficient experience and knowledge . After some objection and talk between counsel and the court, counsel read the following rule: “If a train should part while in motion,trainmen must use great care to prevent the detached parts from coming into collision.’'' Then he asked the following questions:
“Q. Suppose a train of thirty-five cars is running over a railroad, at the rate of twelve or fifteen miles an hour, and separates near the middle, and there is a rule of the company requiring that ‘if a train should part while in motion, trainmen must use great care to prevent the detached parts from coming into collision,’ what in your opinion would the engineer do in the exercise of reasonable care, to comply with the rule?’’
That was objected to by defendant’s counsel; overruled, and excepted to.
“A. Why,[he shouldCkeep^out" of the way. He should keep running right along and keep out of the way until he found out that the hind end was stopped, and until he got a signal from somebody on the rear end. It has always been customary when a train breaks in two and you find out it is broken in two, you don’t stop but keep running to keep out of the way until you find out that the rear end is stopped; and that is the rule, and most all rules. “'|||
“Q. Supposing a ' train of thirty-five cars is running twelve to fifteen^,[miles an hour before the engineer cuts off his steam or applies his brakes, what would he do in order to exercise due care in the operation of the train ? .(Objected to;-overruled; defendant excepted.) A. Well, he should generally look back to see if every thing is all right — to see if_he[has got thej' whole of his train — before he shuts off.’’
' I speak[abouHhose[two questions for the reason that the questions themselves asR for án opinion as to what the *541 engineer would do to exercise due care. That is one of the objections. Another is, that the subject matter sought to be proved was not a matter for an expert to testify about. The question whether expert testimony is competent is not always clear. If, in the opinion of the court, the opinion of one experienced in the particular calling would aid the jury in dealing with the facts of the case, it is proper to admit expert testimony. It has always been held that to a certain extent the calling of expert testimony is discretionary with the court; and if a reviewing court could not say that the expert testimony would have had a biasing effect bn the mind of the jury against the rights of the party excepting, the judgment will not be reversed, although the expert testimony was immaterial. In this case it is somewhat doubtful whether it was a case calling for expert testimony at all. It seems that any juror on that panel knew just about as well how to answer that question as the best expert that could be called. The problem which the plaintiff was solving was, what should be done to avoid a collision. She was seeking to show in case a train broke apart near the center, on a down grade, what should be done by the engineer in charge of the forward part of it to avoid a collision. It would seem to be very obvious, what should be done. The answer, if the .expert answers properly, would certainly not prejudice the defendant, in our judgment; but here in the record, instead of asking that question what, in tbe exercise of due cpre, ought or could have been done to keep these two sections of the train apart— they ask, what should the engineer do in order to obey this rule? and then, what, in your opinion should the engineer do in the exercise of due care, in order to comply with the rule?- The rule required great care. The rule was not of any importance in this connection as determining the obligation resting upon the engineer. It was proper to put it in evidence to show that defendant had *542 prescribed a duty and a rule, but we think it was of no consequence whatever, nor do we think it was proper, to put a witness upon the stand and ask what this engineer ought to have done, or any other engineer ought to have done, in order to obey the rule of care prescribed in this rule, or to obey the rule of care prescribed by the law, to-wit: reasonable care.
They are a class of questions that ought not to be put to witnesses: the jury are to determine those questions. But that does not dispose of this objection. When we come to read the testimony, we are disposed to say that it could not by any possibility prejudice the defendant. The answer to these questions is that he should keep out of the way. Every mémber of the jury knew that this was the thing for him to do. It is for that reason that it is doubtful that expert testimony was required. What should the engineer do to avoid a collision with the following train ? Why, keep out of the way. It is not only a philosophic fact, but everybody familiar with the ordinary laws of nature knows it. That is the answer of the witness in substance: that he was simply to keep out of the way.
In the second question he is asked what he should do to exercise due care before he shuts off steam in going down the grade. Counsel seek to show that it was customary, when they were running on a down grade (and that he should have done so) to look back and see that his train is all together, before he checks,and he puts into the question some objectionable matter; but the answer we do not think is objectionable: “The engineer should generally look back to see if everything is all right to see that he has got the whole of his train, before he shuts off.”
Under these circumstances, we cannot say, in the light of this record, that this evidence was so prejudicial to the defendant that this judgment should be reversed for it.
The next objection is that the court permitted decisions *543 of the state of Indiana to be admitted in evidence. The plaintiff had brought her action, first, under this statute, which established a different rule of liability — a liability under different circumstances than the law of Ohio as declared by it courts; and in the second place, she had brought her action as administratrix for a death occasioned in the state of Indiana, and it is contended that states will not enforce statutes which create rights of action as this statute does, by mere comity. But, however, there is. in the state of Ohio a statute passed in 1894, before this cause of action arose, providing that “whenever death has been or may be caused by wrongful act, neglect or default in any other state, territory, or foreign country, for which a right to maintain an action and recover damages in respect thereof is given by a statute of such- other state, territory, or foreign country, such right of action may be enforced in this state in all cases where such other state, territory, or foreign country allows the enforcement in its courts of the statute of this state of a like character.” There is in Indiana, in the first place, a statute which the court-below held to be of like character with this statute in Ohio, which creates this right of action. And we do not disagree with the court below in its instruction on that point, although there is an objection to it by plaintiff in error. There being such a statute in the state of Indiana authorizing this action by this administratrix against this company, it was incumbent upon the plaintiff to allege, which she did, and to prove by the law of Indiana, that they would enforce similar statutes of other states. And to make that proof, counsel introduced a decision of the supreme court of that state — 113 Ind., 169. I shall not stop to read it. In connection with the objection to that evidence, the court charged the jury upon that point, and that is excepted to. The court said that this evidence having been offered, it then-became the duty of the court to construe the decision.' *544 It is urged that the court ought not to have given a construction to the decision; also that the construction which the court placed upon it was not correct. And it is claimed that the jury ought to have been allowed to construe it. We think the decision was properly admitted, and we think the construction which the court placed upon it was correct. It follows that if the construction which the court placed upon it was a true construction, the defendant could not have been prejudiced by the court so stating to the jury. It was the duty of the court to construe the decision. It was a document with which they were not familiar, which abounded in technical terms and phrases with which they could not be familiar. Therefore it was peculiarly the province of the court to construe it, and we think the court correctly gave it a construction.
The decision offered by the plaintiff below is that in Indiana, irrespective of any statute, the courts themselves will enforce these statutes in other states. The case was based upon an injury happening in Michigan and the objection is strenuously urged that because the case did not arise in Ohio, it did not come within the provisions of our statute. But the supreme court of Indiana has declared that they will enforce actions of a like character arising in other states, regardless of the question whether they em force like actions for accident arising in Indiana. This statute provides that such actions may be maintained in Ohio, where the state wherein the right of action arose, allows the enforcement of the statutes of this state of a like character. We say the decision in Indiana holds the doctrine, that if a case were to arise coming from Ohio, that if would be enforceable in Indiana. No lawyer for a moment' would doubt, having read that decision, if he had such á case and brought it in Indiana, but that it would be enforced in Indiana. So the court having said that to the jury, it is clearly no error to the prejudice of the defend *545 ant, either to have admitted the decision or to have construed it as the court did to the jury.
It is not urged particularly that this verdict is against the weight of evidence, but that claim is made in the petition in error. The evidence offered on the part of the plaintiff, principally by people who were about there at the time of the accident, taken in connection with the testimony of the defendant’s own witnesses — its engineer and the rear brakeman — would clearly authorize the jury to find that when the break in this train was first discovered by any of the employes, the parts were not more than two car lengths apart, and that that distance increased some four or five cars’ length, and that after it bad increased to six or seven, the engineer having knowledge that the train had separated, shut off his steam and put on the' brakes. And witnesses testify, that the forward part of the train came to a full stop before the rear part came upon it, and all the witnesses agree that the shock was very severe. Now then, if a following train had overtaken a head train, both running in the same direction, between twelve and fifteen miles an hour, or possibly eighteen miles an hour, when they had not separated more than seven car lengths, and they were substantially running at about the same speed,if that speed had been kept up, and the forward part of the train had slackened only a little, it is clear to any person of ordinary judgment that a collision could not have resulted in the damage that resulted here, If the forward part of the train, going in the same direction, was moving at almost the same speed, no damage at all would have resulted. Interesting speculations might be made on this proposition. It is nevertheless true that these two parts of the train came together with great force as though the forward part of the train had been at a stand-still; and it must be remembered that the evidence is clear' and undisputed that before this shock came, the brakes on the three cars of this *546 latter section were set tight, because the testimony is that the conductor had set the brakes on one freight car, and the brakeman who was killed had set the brakes on the passenger car and on the caboose. That would have tended to delay the following portion of the train, and upon an incline of only a few feet to the mile its velocity could not have been increasing very rapidly at that time. So we are satisfied that the evidence supports the theory of the plaintiff that this forward part of the train was slacked up by the engineer after he become rware, or ought to have become aware, that the (rain had parted. He says he was notified that the train was apart by the forward brakeman, and he looked back and saw it was apart, and grabbed hold of the lever and started the engine ahead, give it more steam. He had shut off the steam before that, and he gave it more steam when the shock came. It is conceded that the front brakeman, the rear brakeman, and the conductor had all ascertained that the train had separated, so that the statement of the engineer could not be quite true. Considerable time elapsed. The conductor saw the front brakeman running, warning the engineer with the wave of his arm. That attracted his attention. That was after the front brakeman had discovered that the train was broken. He then looked out of the caboose cupola, and saw by the sun shining on the train that the train had separated. He told the brakeman what had happened, and said to him “we must give.j-irdo her,” and went out of the cupola window on thp^foof of the caboose, and went across the roof of the passenger coach to the next freight car, and set the brakes on that car before the collision came. The brakeman went down from his perch and set the brakes on both cars, the caboose and the passenger car, before the collision came. That must have occupied quite a little time — a much longer time than the engineer indicates by his testimony. So that we are satisfied. that the defendant is liable for the *547 acts of negligence of the engineer, and that the evidence sustains the verdict. As to the amount of the verdict, we cannot say it is so large as, to make it excessive,
Hurd, Brumbaclc & Thatcher, for Defendant in Error.
Potter and Em&ry, for Plaintiff in Error,